UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| Frederick J. Calatrello, | ) | CASE NO.:  5:11CV992 |
| | ) | |
| Petitioner, | ) | JUDGE JOHN ADAMS |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| American Bottling Company, Inc., | ) | |
| | ) | |
| | ) | |
| | ) | (Resolves Doc. 8, 14) |
| Respondent. | ) | |

This matter comes before the Court on Petitioner's motion for injunctive relief based upon the pleadings and affidavits before the Court.  For the reasons stated herein, the motion (Doc. 8) and Petition are GRANTED.

**I.  Facts**

Plaintiff Frederick J. Calatrello, the Regional Director for Region 8 of the National Relations Board, filed this petition pursuant to Section 10(j) of the National Labor Relations Act.  The petition seeks injunctive relief pending final disposition before the NLRB on charges filed by Teamsters Local 293.

The facts giving rise to the Board's charge are largely undisputed.  In late 2010, Respondent closed two outdate bottling plants in Northeast Ohio, a plant in Akron and a plant in Maple Heights.  These facilities were consolidated and relocated to Twinsburg, Ohio.  The decision to consolidate created a potential problem because the Akron employees (warehousemen, delivery drivers, vending, mechanics, and merchandisers) were represented by Local 348, while the Maple Heights employees were represented by

either Local 293 (delivery drivers, advance sales representatives, and helpers) or Local 1164 (forklift operators and warehousemen). Additionally, employee classifications differed at both locations, resulting for example in groups being represented at one and not the other location. Moreover, none of the unions represented a majority of the workforce following consolidation.

Over the weeks and months leading up to the consolidation, Respondent held numerous meetings with all three local unions. The unions themselves also met and went as far raising a jurisdictional claim to the Joint Council. These meeting and their results are thoroughly detailed by the ALJ in his decision finding certain unfair labor practices. See Doc. 29-1.

Ultimately, Local 348 was recognized by Respondent as the bargaining unit. It is the events leading up to that recognition that gave rise to the charges that Respondent engaged in unfair labor practices. The charges were heard by an ALJ and his decision was issued prior to an order from this Court. The ALJ concluded that Respondent engaged in an unfair labor practice by granting recognition to and entering into a contract with Local 348. The ALJ further concluded that Respondent committed an unfair labor practice by deducting Local 348 dues from its employees. The ALJ, however, found no violation with respect to allegations that Respondent had threatened employees in violation of Section 8(a)(1) of the Act.

While this action was pending prior to the ALJ's decision, this Court withheld a ruling because the administrative process was moving quickly forward. As the initial stage of that process is now complete, the Court issues its ruling.

**II. Law & Analysis**

Petitions for injunctive relief brought under Section 10(j) are subordinate to the unfair labor practice proceedings to be heard before the NLRB. *Fleischut v. Nixon Detroit Diesel, Inc.*, 859 F.2d 26, 28 (6th Cir. 1988). "The district courts in their analysis under 10(j) are not to adjudicate the merits of the unfair labor practice case." *Id.* To issue a § 10(j) injunction, the district court first must find that there is "reasonable cause" to believe that the respondent has committed unfair labor practices. *Id*. at 29. Second, if reasonable cause exists, this court must determine whether injunctive relief is "just and proper." *Id*. An injunction may be granted only if both of these steps are met.

Petitioner's burden to establish "reasonable cause" is "relatively insubstantial." *Id.* Petitioner "need not prove a violation of the NLRA nor even convince the district court of the validity of the Board's theory of liability; instead, he need only show that the Board's legal 'theory is substantial and not frivolous.'" *Schaub v. West Michigan Plumbing & Heating, Inc.*, 250 F.3d 962, 969 (6th Cir. 2001) (citations omitted).  This Court need not resolve conflicting evidence between the parties. *See Fleischut*, 859 F.2d at 29 (stating that the appellant's appeal did not seriously challenge whether reasonable cause exists; instead, it simply showed that a conflict in the evidence exists); *Gottfried v. Frankel,* 818 F.2d 485, 494 (6th Cir. 1987) (same).  Instead, there need only be facts which could support the Board's theory. *Fleischut*, 859 F.2d at 29; *Gottfried*, 818 F.2d at 494.

With respect to the just and proper prong of the Court's review, the Sixth Circuit has noted as follows:

> In determining whether injunctive relief under s 10(j) of the Act is just and proper, the principal consideration is whether, under the circumstances of the case, judicial action is in the public interest.
>
> Interim judicial relief is warranted whenever the circumstances of a case create a reasonable apprehension that the efficacy of the Board's final order may be nullified, or the administrative procedures will be rendered meaningless. In such cases, preservation and restoration of the status quo are then appropriate considerations in granting temporary relief pending determination of the issues by the Board.

*Sheeran v. American Commercial Lines, Inc.*, 683 F.2d 970, 979 (6th Cir. 1982) (alterations, citations, and quotations omitted).

Given the nature of the ALJ's decision, the Court is hard pressed to reach any conclusion other than a conclusion that Petitioner has reasonable cause to bring this action.  The Court readily acknowledges that the ALJ's factual findings are in no way binding on this Court.  However, given the "relatively insubstantial" burden on Petitioner to warrant injunctive relief, the Court finds that the first prong has been met.

Based upon the record before this Court, there is sufficient evidence for Petitioner to conclude that unfair labor practices had been committed -- specifically, the recognition of Local 348 without a formal vote.

> When an employer merges two separately represented work forces the employer may not choose between the competing representational claims, unless one of the merged groups constitutes such a large proportion of the combined work force that there is no reason to question the continued majority status of that group's bargaining representative. *Boston Gas Co.*, 235 NLRB 1343, 1355 (1978); *Martin Marietta Refractories Co.*, 270 NLRB 821, 822 (1984).

*Metropolitan Teletronics Corp.*, 279 NLRB 957, 960 (1986).  The Court has reviewed the evidence submitted, the ALJ's decision, and has also reviewed Local 348's exceptions to the decision of the ALJ.  In large part, Local 348 disagrees with the ALJ's conclusion that it did not represent such a large proportion of the workforce to warrant a conclusion that

no vote was necessary. Specifically, Local 348 contends that previously unrepresented merchandiser and mechanic employees should have been automatically included when assessing the total number of represented employees for each bargaining unit. From the Court's perspective, this does not follow the policy espoused by the Act. As previously unrepresented employees, these employees have never chosen Local 348 as their bargaining unit. Thus, to utilize these employees to justify Local 348's majority status makes little to no sense to the Court. Furthermore, the ALJ noted as follows:

> The Respondent does not dispute that it executed the contract with Local 348 on January 14. The Respondent also does not dispute that Local 348 did not have majority status in the contractual unit at that time. Nor does the Respondent dispute that it could not lawfully 30 recognize Local 348 at Twinsburg without evidence that it had majority support in the unit.

Doc. 29-1 at 14. Thus, the Court is not inclined to adopt Local 348's theory regarding its majority status.

Moreover, the Court is not inclined to adopt Local 348's position that its contract carried over to the new location. In support of this argument, Local 348 relies upon *Harte & Co.*, 278 NLRB 128 (1986). However, as the ALJ properly noted, *Harte* is easily distinguishable because it involves relocation, not consolidation.

> In those cases, the employer closed only one facility and the relocated employees were represented by only one union. The Board held that, in such circumstances, the employer was obligated to honor the extant contract and recognize the union as the exclusive representative of the employees at the new location, including any new hires, provided that the employer's operations remained substantially the same and a substantial percentage of the represented employees (approximately 40 percent or more) transferred to the new facility.
>
> Here, in contrast, two facilities were closed, and employees from both of the closed facilities, who were represented by three different unions under three separate collective-bargaining agreements, were merged at the new facility. A substantial number of unrepresented employees at both of the

>closed facilities also transferred to the new facility and were included in the negotiated unit.

Doc. 29-1 at 17.  The Court agrees that *Metropolitan Teletronics*, cited and quoted above, is more applicable to the underlying facts herein.  As such, the Court likewise declines to adopt Local 348's argument on this issue.

Based upon the full record before this Court, the Court finds that Petitioner had reasonable cause to believe that Respondent had violated the Act.  As such, the Court must now determine whether injunctive relief is just and proper.  The Court answers this question in the affirmative.

Currently, Local 348 is recognized as the exclusive collective-bargaining representative at the Twinsburg facility.  Until the administrative process comes to its completion, this is likely to remain true.  The longer this union is continuously recognized, the more difficult it will become to hold a full and fair vote on representation.  Accordingly, the Court finds that immediate injunctive relief is just and proper to avoid the efficacy of the Board's final order from being nullified.

### III. Conclusion

For the reasons stated herein, Petitioner Frederick J. Calatrello's petition for injunctive relief is hereby GRANTED.  Respondent American Bottling Company, Inc. is HEREBY ENJOINED from granting recognition or support to Local 348 as the exclusive bargaining unit at its Twinsburg facility.[1]  To the extent necessary, Respondent shall immediately withdraw and withhold recognition of Local 348 as the exclusive collective-

---

[1] The Court recognizes that such an injunction may lead to the unintended result that all three union's previously represented employees will have no representation.  However, it is apparent that this could be quickly remedied if Respondent voluntarily chose to engage in the type of vote contemplated by the Act.

bargaining unit. Furthermore, Respondent is HEREBY ENJOINED from deducting Local 348 dues from its employees at the Twinsburg facility.

The Court has also carefully reviewed the motion to disqualify attorney James Wallington. Doc. 14. The motion is DENIED.


Dated: November 3, 2011                    /s/ Judge John R. Adams
                                          JUDGE JOHN R. ADAMS
                                          UNITED STATES DISTRICT COURT